**UNITED STATES of America,**
**Plaintiff,**

v.

**TULARE LAKE CANAL COMPANY,**
**a corporation, Defendant,**
**and**
**Tulare Lake Basin Water Storage District and Salyer Land Company, a corporation, Intervenor Defendants.**

**Civ. No. 2483.**

United States District Court,
E. D. California.

Jan. 6, 1972.

David R. Warner, Chief, William R. Klein, Douglas N. King, Attys., General Litigation Section, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., Dwayne Keyes, U. S. Atty., Sacramento, Cal., for plaintiff.

Alvin J. Rockwell, Thomas A. Welch, San Francisco, Cal., James G. McCain, Corcoran, Cal., for defendant Tulare Lake Canal Co.

Ernest M. Clark, Jr., Robert M. Newell, Los Angeles, Cal., for intervenor-defendant Tulare Lake Basin Water Storage Dist.

C. Ray Robinson, William T. Ivey, Jr., Merced, Cal., for intervenor-defendant Salyer Land Co.

## MEMORANDUM AND ORDER

CROCKER, District Judge.

The United States brought this action for an injunction to restrain the defendant, Tulare Lake Canal Company, from delivering stored water released to it from Pine Flat Dam and Reservoir to any lands in excess of 160 acres in any one ownership unless the owner complied with the legal requirements of reclamation law.

Intervenors, Tulare Lake Basin Water Storage District and the Salyer Land Company, obtained leave to intervene as parties defendant.

Defendant, Tulare Lake Canal Company, admits that stored water is being delivered to the excess land of the Chatom Company which has not executed a recordable contract for the sale of excess land.

All parties concede that the Pine Flat Dam and Reservoir was built pursuant to the Flood Control Act of 1944 and that the terms of the said Act are controlling with respect to the delivery of water to the defendants.

Plaintiff contends that Section 8 [1] of the Flood Control Act of 1944 requires

1. "Hereafter, whenever the Secretary of War determines upon recommendation by the Secretary of the Interior that any dam and reservoir project operated under the direction of the Secretary of War may be utilized for irrigation purposes, the Secretary of the Interior is authorized to construct, operate, and maintain, under the provisions of the federal reclamation laws (Act of June 17, 1902, 32 Stat. 388, and Acts amendatory thereof or supplementary thereto), such additional works in connection therewith as he may deem necessary for irrigation purposes. Such irrigation works may be undertaken only after a report and finding thereon have been made by the Secretary of the Interior as provided in said federal reclamation laws and after subsequent specific authorization of the Con-

application of reclamation law and defendant contends that Section 10 [2] of the same Act prevents the imposition of reclamation law. Defendant also claims that if reclamation law does apply, lump sum payment of allocable costs of construction of the dam relieves them of the 160 acre limitation and also that applying acreage limitation to them would be unconstitutional.

The value of a dam at Pine Flat has long been recognized as it would regulate the flow of the Kings River and thus prevent flood damage and would provide water for irrigation when it was needed instead of when nature sent it down the stream.

The U. S. Army Corps of Engineers proposed to build the dam as a flood control project and the Bureau of Reclamation desired to build the dam as a reclamation project. The legislative history cited by all parties to this lawsuit supports their position as so much was said by Congress, the President and the various governmental agencies that citations are available for all positions.

It appears that Congress settled the dispute in favor of flood control. Not only did it entitle the act authorizing the construction of Pine Flat Dam and Reservoir the Flood Control Act of 1944, but it entrusted the construction to the U. S. Army Corps of Engineers under the direction of the Secretary of War.

There were many reasons which prompted Congress to reach this decision, some of which are:

1. Studies showed flood control benefits to be greater than irrigation benefits.

2. The Government claims no water rights in the Kings River.

3. All the water rights to the Kings River are vested in the water users.

4. The dam would not create supplemental water which could be sold by the Government.

5. Arid land would not be reclaimed by reason of the dam being built.

6. All the canals and ditches carrying water from the Kings River to the farms are owned by the water users.

7. 200,000 acres known as the Tulare Lake Basin are subject to flood and drought, and are not adaptable to actual

gress by an authorization Act; and, within the limits of the water users' repayment ability such reports may be predicated on the allocation to irrigation of an appropriate portion of the cost of the structures and facilities used for irrigation and other purposes. Dams and reservoirs operated under the direction of the Secretary of War may be utilized hereafter for irrigation purposes only in conformity with the provisions of this section, but the foregoing requirements shall not prejudice lawful uses now existing; provided, that this section shall not apply to any dam or reservoir heretofore construed in whole or in part by the Army Engineers, which provides conservation storage of water for irrigation purposes."

2. "That the following works of improvement for . . . the control of destructive flood waters and other purposes are hereby adopted and authorized . . . to be prosecuted under the direction of the Secretary of War and supervision of the Chief of Engineers in accordance with the plans in the respective reports here-inafter designated and subject to the conditions set forth therein . . . .

\* \* \* \* \*

"The project for flood control and other purposes for the Kings River and Tulare Lake Basin, California, is hereby authorized substantially in accordance with the plans contained in House Document Numbered 630, Seventy-sixth Congress, third session, with such modifications thereof as in the discretion of the Secretary of War and the Chief of Engineers may be advisable at an estimated cost of $19,700,000: Provided, That the conditions of local cooperation specified in said document shall not apply: Provided further, That the Secretary of War shall make arrangements for payment to the United States by the State or other responsible agency, either in lump sum or annual installments, for conservation storage when used: Provided further, That the division of costs between flood control, and irrigation and other water uses shall be determined by the Secretary of War on the basis of continuing studies by the Bureau of Reclamation, the War Department, and the local organizations."

settlement as contemplated by the reclamation laws.

 Thus the Pine Flat Dam and Reservoir is not a reclamation or irrigation project but is actually a flood control project with incidental conservation storage for irrigation. Congress provided that the water users pay the costs of the dam attributable to conservation storage which the Secretary of War has determined to be $14,250,000. In addition, the water users are required to pay a share of the costs of operation, maintenance and contract administration in return for the privilege of storing their water behind the dam.

Acreage limitations were not proposed by the Army Engineers in their reports submitted to Congress. Congress adopted these reports and incorporated them into the Flood Control Act of 1944. Congress never intended that acreage limitations be applied to the water stored behind the Pine Flat Dam or it would have said so.

The Government contends that Section 8 (Footnote 1, supra) of the Act requires the application of acreage limitations but this section would apply only if supplemental water were developed which would be owned by the Government and could be sold, or to water that would be delivered through canals and ditches built by the Bureau of Reclamation, neither of which occurred.

Section 10 (Footnote 2, supra) of the 1944 Act specifically authorizes the Secretary of War to make arrangements for payment to the United States for water storage either in lump sum or annual installments and to determine the division of costs between flood control and irrigation.

The defendant, Tulare Lake Canal Company, having vested rights in the water in the Kings River and having paid the United States its share of the cost of constructing Pine Flat Dam, as determined by the Secretary of War, is not subject to the 160 acre limitation of the reclamation laws.

Therefore, the Government's request for an injunction is denied, because reclamation laws do not apply to water stored behind the Pine Flat Dam, and if they did, pay-out relieved defendant of the 160 acre limitation.

In view of this conclusion, the constitutional questions raised by defendant were not reached.

Counsel for defendant is directed to prepare and lodge findings of fact, conclusions of law and form of judgment in accordance with the Local Rules of this court.